1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTOPHER DEANE, MICHAEL ROMANO, AND LISA JOHNSON, <br><br> Plaintiffs, <br><br> vs. <br><br> FASTENAL COMPANY, <br><br> Defendant. | **Case No.: 11-CV-0042 YGR** <br><br> **ORDER DENYING CLASS CERTIFICATION** |

Plaintiffs Kristopher Deane, Michael Romano, and Lisa Johnson ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Fastenal Company ("Fastenal"). Plaintiffs allege claims for unpaid wages and unpaid meal and rest break compensation on the grounds that they were misclassified as exempt employees. Defendants contend that Plaintiffs are exempt from overtime under the executive, administrative, or outside sales exemptions, or some combination of those exemptions. Plaintiff has filed a Motion for Class Certification Under Rule 23 of the Federal Rules of Civil Procedure. Having carefully considered the papers submitted, the admissible evidence,[1] the arguments of counsel at the hearing, and the pleadings in this action, the Court hereby **DENIES** the Motion for Class Certification for the reasons set forth below.

---

[1] Fastenal's objection to the Declaration of Lisa Johnson in Support of Plaintiffs' Reply (Dkt. No. 92-2) is **SUSTAINED** as contrary to her deposition testimony. Fastenal's objections to other evidence submitted with the reply are **OVERRULED**. Plaintiffs' objection to Fastenal's citation to Keith McFarland, *THE BREAKTHROUGH COMPANY: HOW EVERYDAY COMPANIES BECOME EXTRAORDINARY PERFORMERS* (at Oppo. 1-2) is **SUSTAINED** on the grounds that it is inadmissible hearsay.

## I.    PROCEDURAL HISTORY

Plaintiffs Kristopher Deane and Michael Romano filed this action on February 16, 2011. Plaintiff Lisa Johnson was added as a representative plaintiff in the Second Amended Complaint filed on May 7, 2012.

On September 23, 2011, plaintiffs moved for conditional certification of this action as a collective, opt-in action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*  By Order issued November 14, 2011, the Court granted that motion.  The parties were given an opportunity to conduct discovery relevant to the question of class certification under Rule 23. Plaintiffs thereafter filed the instant motion.

## II.    BACKGROUND

Fastenal is a seller of industrial and construction supplies with over 2,300 domestic retail stores, and thousands of employees, across the country.  Each store location has a General Manager ("GM").  Plaintiff Michael Romano was employed as a GM from November 10, 2004, through June 10, 2010, at three different stores in California.  Plaintiff Lisa Johnson was employed as a GM at a Fastenal store in Milpitas, California.  All GMs are classified as exempt from overtime by Fastenal. GMs are paid a salary plus a commission on outside sales work.  (*See, e.g.,* Declaration of Reyne Wisecup, Defendant's Exh. 8, at ¶ 12; Plaintiffs' Exh. BB ¶ 9, CC ¶ 14, ¶ DD ¶ 12, EE ¶ 11.) Fastenal has created no job description for the general manager position nor a standardized job posting.  (Declaration of Reyne Wisecup ¶ 8, 9.) However, the parties agree that the duties of a general manager generally include some sales and/or delivery activity outside the store as well as in-store tasks.

Staffing at the individual stores varies, with anywhere from one to six full time employees, and zero to "several" part-time employees, per store.  (*See, e.g.,* Defendant's Exh. 1 [Romano Depo.] at 145; Plaintiffs' Exh. EE ¶ 9, FF ¶5, NN ¶ 6.)  Fastenal's business model is focused on outside

2

sales, with the vast majority of business coming from sales to customers in the field rather than in-store.  (Wisecup Decl. ¶ 4 ["over 90% of the Company's sales came" from outside sales in the second quarter of this year].)  Local retail stores generally service local business accounts, with some stores servicing only a few large accounts, and other stores servicing a larger mix of accounts.  Depending on the location, the actual store may have very few walk-in customers, with most effort devoted to selling products to corporate customers, delivering and stocking those products on-site for customers, and ordering or locating products requested by the customers, either from Fastenal or from some other source.  Each GM reports to a District Manager.  (Wisecup Decl. ¶ 7.)  Those District Managers monitor each store's activities, though the parties disagree about the extent of such monitoring for any given GM or store.

Plaintiffs seek to certify a class consisting of "all persons who were employed as overtime-exempt managers by Defendant in one or more of its Fastenal retail locations in California at any time on or after February 16, 2007."[2]  (Second Amended Complaint ["SAC"], Dkt. No. 78, ¶ 26.)  Approximately 284 employees fall into the class definition.  Plaintiffs have submitted declarations from 26 putative class members in addition to their two class representatives, Romano and Johnson.  Defendants have submitted declarations from 17 putative class members, as well as excerpts from the depositions of Romano, Johnson and four other putative class members who submitted declarations in support of Plaintiffs' motion.

_____

[2]  Defendants refer to the employees at issue here as "General Managers," while Plaintiffs refer to them as "Store Managers."  All parties agree that there is another category of exempt managers employed by Fastenal, namely the District Managers to whom Plaintiffs and the putative class report.  The class definition, while imprecise, does not appear to encompass District Managers.

United States District Court
Northern District of California

III.    **STANDARDS APPLICABLE TO THE MOTION**

A party seeking to certify a class must first satisfy the four requirements set forth in Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  FRCP 23(a); *see Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2550 (2011) ("*Dukes*").  In addition, the party seeking certification must demonstrate that it meets one of the following three conditions:

> (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications;
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or
>
> (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b); *see Dukes*, 131 S.Ct. 2551.  In addition, under Rule 23(c)(4), "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed.R.Civ.P. 23(c)(4)(A).

IV.    **DISCUSSION**

In this case, the dispute between the parties centers primarily on whether common issues of fact predominate over individual issues pursuant to Rule 23(b)(3).  Because this factor essentially is dispositive, the Court focuses its discussion on it.

The inquiry with respect to predominance is whether the record establishes that class treatment "would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about

4

other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 623- 24 (1997).  The common question or issue "must be of such a nature that it is capable of class-wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551. "What matters to class certification ... [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation[; d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 2251 (emphasis in original omitted).

While the Court does not look to the merits of the claims on a motion for class certification, frequently the analysis required to determine if Rule 23 is satisfied "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 2551-52.  This is because the Court must proceed from an understanding of the elements required to prove the claims and whether those elements are susceptible to common proof.  "Because the 'nature of the evidence that will suffice to resolve a question determines whether the question is common or individual,' 'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 609-10 (N.D. Cal. 2010) quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) (internal citations omitted).

**A.      Do Common Questions of Law or Fact Predominate?**

For purposes of the motion, the Court must look to the nature of the proof that would be necessary to establish the putative class members' entitlement to relief on their claims.  Plaintiffs contend that they are entitled to overtime compensation, while Fastenal contends that the GMs in the putative class are exempt from overtime compensation under one or more, or a combination of, the following exemptions: (i) outside sales, (ii) executive, and (iii) administrative.  Plaintiffs argue that, at the certification stage, the Court need not consider how much time is spent on the various tasks

United States District Court
Northern District of California

GMs perform, but should look solely to the fact that GMs all performed the same kinds of tasks, and the nature of those tasks. (Mtn. at 1-2.) However, each of the exemptions at issue here includes an element related to the percentage or proportion of the employee's time spent on tasks that qualify for the exemption.[3] As a result, each exemption requires the Court to make some determination about how an employee actually spends his or her time. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 945 (9th Cir. 2009); *see also Ramirez v. Yosemite Water Co.,* 20 Cal.4th 785, 802 (1999); *In re Wells Fargo Home Mortg. Overtime Pay Litig.* ("*Wells Fargo I*"), 571 F.3d 953, 959 (9th Cir. 2009); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 948 (9th Cir. 2011). "[W]hen an employer asserts an exemption as a defense, such as the outside sales exemption, the resolution of which depends upon how employees spend their time at work, unless plaintiff proposes some form of common proof, such as a standard policy governing how and where employees perform their jobs, common issues of law or fact are unlikely to predominate." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 611 (N.D. Cal. 2010) ("*Wells Fargo II*"). Thus, Plaintiffs here

---

[3] Employees qualify for the outside sales exemption if they: (i) are over the age of 18; (ii) customarily and regularly work *more than half their working time* away from the employer's place of business; and (iii) are selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities. *See* I.W.C. Wage Order No. 4- 2001 § (2)(M), Wage Order 7-2001 § (2)(J) (emphasis added).

Employees qualify for the executive exemption if they: (i) manage the enterprise, a customarily recognized department, or a subdivision thereof; (ii) customarily and regularly direct the work of two or more employees; (iii) have the authority to hire or fire other employees *or* their suggestions and recommendations about hiring, firing, advancing, promoting, or other change of status are given particular weight; (iv) customarily and regularly exercises discretion and independent judgment; and (v) are *primarily engaged in* duties which meet the exemption (such as interviewing, selecting, training, disciplining, directing the work of, and appraising the work performance of employees; handling employee complaints; planning work schedules; controlling flow of materials, merchandise or supplies). *See* I.W.C. Wage Order 4-2001 § (1)(A)(1); I.W.C. Wage Order 7-2001 § 1(A)(1) (emphasis added).

Employees fall under the administrative exemption if they: (i) perform office or nonmanual work directly related to management policies or general business operations of the employer or its customers; (ii) customarily and regularly exercise discretion and independent judgment; (iii) are in charge of a functional department (even if only a one-person department), or perform, under only general supervision, work along specialized or technical lines requiring special training, expertise, or knowledge; and (iv) *are primarily engaged in* duties that meet the exemption. *See* I.W.C. Wage Order 4-2001 § 1(A)(2); I.W.C. Wage Order 7-2001 § (1)(A)(2) (emphasis added).

must show that the way GMs actually spend their time can be shown by common proof.  Their attempt to do so is unsuccessful.

For example, Plaintiffs contend that District Managers monitor the GMs' activities on a near daily basis, and that only District Managers have authority to hire and fire employees, administer store budgets and approve product pricing.  (Mtn. at 3.)  Yet Fastenal presents evidence showing that at least some GMs say they have great discretion over store operations and there is little oversight by their District Manager.  (Defendants' Summary to Prove Content and evidence cited therein ["SPC"][4] at Issues 1 and 3.)  A number of putative class members testified that they were encouraged to run their store location as they saw fit, as if it were their own business.  (SPC 1.)  Indeed, Plaintiffs' own evidence on this point is more equivocal than they would suggest:  some declarations indicated contact with a District Manager daily or multiple times per day; while others indicated only weekly or "near weekly" contact; and finally others were notably silent.  *(See, e.g.,* Plaintiffs' Exh. BB ¶ 4, *II* ¶ 9, MM ¶ 7, compared to Exh. FF ¶ 10, TT ¶10.)  Moreover, the named plaintiffs conceded at deposition that, even when they needed approval from their District Manager for certain decisions.  Further, Fastenal gave substantial weight to the GM's recommendations and almost always accepted them.  (Romano Depo. at 122-24, 159-60, 170; Johnson Depo. 190, 192-93, 216-17.)

Next, Plaintiffs argue that GMs spend very little of their time supervising employees and do not regularly direct the work of two or more employees.  However, again, Plaintiffs' own evidence on this point is more equivocal, with some declarants stating that they spend more than 50% of their time supervising employees, and others indicating that they spend 20-40% of their time supervising employees.  (*See* Plaintiffs' Exh. HH ¶ 5, KK ¶ 5, ZZ ¶ 5 compared to Exh. DD ¶ 5, FF ¶ 5, GG ¶ 5,

---

[4]  All further citations to SPC refer to Defendant's Summary to Prove Content, Exh. 1 to the Declration of Erica Rokush in Support of Opposition (Dkt. No. 90-2), and evidence cited therein.

SS ¶ 5, TT ¶ 5.)  By contrast, a number of the employees submitting declarations on behalf of Defendant state that they supervised at least two employees and spent a significant amount of time supervising employees including coaching, setting schedules, training and the like.  (*See* SPC 2, 4, 9.)

Plaintiffs maintain that GMs have consistent job duties across all stores and most of a GM's time is spent performing manual tasks such as loading and unloading trucks, scanning inventory into the computer system, sorting products for stock and customer delivery, and packaging shipments, as well as maintaining the stores' appearance through sweeping, mopping, breaking down boxes, and cleaning the store bathroom. (*See, e.g.,* Plaintiffs' Exh. ZZ ¶ 4, 7, 8; AAA ¶3.)  Thus, Plaintiffs argue that the GMs' work involves very little discretion and independent judgment, but mainly consists of performing the same tasks as non-exempt employees.  Fastenal presents evidence from a number of putative class members that other employees performed these manual tasks.  (SPC 16; *see also* Romano Depo. at 114 [cleaning was regularly delegated to part-time employees].)  Some GMs spent little or no time on such tasks, delegating them to other employees.  Several GMs testified that the time spent on manual tasks varied from store to store, depending on such factors as the District Manager's management style and the store's physical condition.  (*See* SPC 16.)  Again, Plaintiffs' own evidence paints a variegated picture, with declarants stating that they spent anywhere from 30-80% of their time on routine, in-store tasks.  (*Compare* Dec GG ¶ 4, 7, 8; KK ¶ 4, 7, 8; OO ¶ 3 4, 5; and PP ¶ 4, 5, 9; with SS¶ 4, 7, 8; and YY¶ 3, 6, 7, 8.)[5]

As a result of the GMs' in-store job duties, Plaintiffs argue that GMs cannot, therefore, uniformly spend a sufficient amount of time engaged in outside sales activities.  Again, Plaintiffs'

---

[5]  Fastenal protests, and rightly so, that the time estimates in many of the declarations do not add up. For example, some declarations state that 80% of the declarant's time was spend on routine, in-store tasks while at the same time estimating that 40% of the declarant's time was spent outside the store on sales and sales-related activities.  (Dec GG.)  These discrepancies and inconsistencies in the evidence further undermine Plaintiffs' showing here.

evidence on this point varies widely, with some declarants offering that they spent "small amounts of time," "very little time," or 15% of their time away from the store, and others stating that they spent 40-50% of their time away from the store, and anywhere from 10-90% of that time on "sales." (*See* Decs. BB ¶ 8; DD ¶ 6; and *II* ¶ 8; and Decs. FF ¶ 6; GG ¶ 6; WW ¶ 9; and YY ¶ 5.) Similarly, Fastenal presented evidence that some GMs spent 85-90% of their time on outside sales calls, and that named plaintiffs Johnson and Romano both conceded that they spent 60% of their time on outside sales for a significant part of their tenure as GMs. (*See* Romano Depo, 91, 151, 156; Johnson Depo 74, 157, 225-26; SPC 17.)

With respect to these "outside sales calls," Plaintiffs contend that they cannot truly be considered "outside sales" since the work is usually just making deliveries, unloading and stocking products at the customer location, and counting current inventory for reorders. Defendants argue, and offer evidence from putative class members, that the majority of the time spent on activities outside the store was "sales" work, or work incidental and necessary to sales. (SPC 12, 13.) Defendants contend that activities like phone calls, returning email, sourcing and making deliveries are all tasks that qualify for the outside sales exemption. Indeed, Plaintiff Johnson testified that she chose to do deliveries to customers rather than delegate the work because she considered it, "building relationships with my customers. . . if they saw me on a more consistent basis, it was kind of that next foot in the door to maybe get them to buy more or use that as a sales call." (Johnson Depo. at 124; see also Romano Depo. at 97 [deliveries are meant to be sales opportunities]) More important to the analysis here, both Defendant's and Plaintiffs' declarants testify that the amount of time spent on these activities varied. (*See* SPC 12, 13.)

Plaintiffs point to centralized training of GMs at Fastenal's Minnesota headquarters as evidence that GMs are trained to follow uniform policies and procedures, and therefore have uniform job duties susceptible to class-wide proof. However, Fastenal presents evidence from its executive

vice president of Employee Development, Reyne Wisecup and its Manager of Employee Training, Peter Guidinger, that the two-week training and orientation is offered to all new employees and does not cover GMs' job duties or the time that should be spent performing them. (Defendant's Exh 8 [Wisecup Decl.] ¶ 14; Exh. 9 [Salfi Decl.] ¶¶ 6-8; Exh. 11 [Guidinger Depo.] at 32, 45.).  Plaintiff Johnson herself testified that she did not receive training on how to perform her duties as a GM and was not aware of any standard policies or procedures for how to perform the job.  (Johnson Depo. 86, 89, 94-95.)

Finally, Plaintiffs argue that because Fastenal has a uniform policy of classifying all GMs as exempt, this blanket exemption means that common factual and legal issues predominate, citing *Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005).  Plaintiffs' reliance on Fastenal's policy, and their reliance on the *Wang* decision, are both misguided.  First, the decision in *Wang* was vacated by grant of certiorari and remanded to the Ninth Circuit for further consideration in light of its decision in *Dukes*.  *Chinese Daily News, Inc. v. Wang*, 132 S. Ct. 74 (2011).  It was improper for Plaintiffs to cite to it, much less make it a centerpiece of their argument.

Moreover, if the Court were to rely on nothing more than a policy classifying employees as exempt without consideration of the nature of the exemption and the evidence necessary to establish that it applies, the Court would have to ignore the purposes of the class certification mechanism.  A policy classifying employees as exempt says little or nothing about how those employees actually spend their time, the necessary inquiry for any of the exemptions here.  Compounding the complexity of an analysis, Fastenal has offered evidence that multiple exemptions, each with their own qualifying tasks and time requirements, apply to different GMs at different times during the class period.  It is clear that a policy characterizing all GMs as "exempt," even if it is a characteristic common to all class members, tells us little or nothing about whether their status as exempt or non-exempt can be determined by collective proof.  As the Ninth Circuit has held in numerous recent

opinions, "a district court abuses its discretion in relying on an internal uniform exemption policy to the near exclusion of other factors relevant to the predominance inquiry." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009); *see also, In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (relying on an exemption policy to establish a presumption of propriety of class certification "disregards the existence of other potential individual issues that may make class treatment difficult if not impossible"); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 948 (9th Cir. 2011) (blanket exemption policy does not eliminate requirement to make a factual determination about whether class members' actual work meets the test for the exemption).[6]

Plaintiffs suggest that class-wide proof can be made by representative testimony as to the duties in-store duties they perform, the nature of the outside sales activities they perform and the amount of time spent on both.  (Motion at 21:17-22.)  As the Supreme Court recently reiterated in *Dukes*:

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal citations and quotations omitted).  Indeed, "representative testimony is typically only allowed in the unpaid overtime context to establish the *number* of hours employees worked and the amount they were paid, not whether a class of employees was exempt from the overtime laws' coverage."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 612 (N.D. Cal. 2010) (emphasis added); *see also Beauperthuy*

---

[6]  That is not to say that evidence of certain kinds of policies is not relevant to the predominance analysis.  *See, e.g.*, *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 327-28 (2004) (upholding class certification under state law where plaintiffs offered standardized job descriptions, performance criteria, scheduling policies and training programs to show that "at least partly as a consequence of operational standardization imposed by defendant among its various stores, [putative class members] in fact spent insufficient time on exempt tasks to justify their being so classified").  The Court notes that, in *Sav-On*, the differences in the evidence submitted for and against certification were not so much about the time spent on certain tasks, but about whether such tasks should be considered exempt or non-exempt work.  *Id. at 330-31.*

*v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1131 (N.D. Cal. 2011) (wide variations in testimony between the managers, showing "discrepancies between the duties actually performed by class members[,] weigh in favor of decertification" of FLSA representative action").  Determining liability as to an entire class of employees based upon only a sampling of testimony – whether that determination is in favor of plaintiffs or defendants – can only comport with Rule 23 and the due process safeguards underlying it if sufficient evidence exists to support a finding that the factors leading to liability are, indeed, substantially similar for everyone in the class.  Here, Plaintiffs attempt to leapfrog over the primary question that the Court must answer: does the evidence here suggest sufficient uniformity among putative class members on the fact questions relevant to liability?  The answer, quite plainly, is no.

In sum, and even if the Court considered Plaintiffs' evidence alone, the record here demonstrates that the amount of time spent on exempt activities varies widely between putative class members.  Moreover, Plaintiffs point to no common policies or procedures, no common training about how to perform the GM job, nor any other evidence to show that the amount of time spent on exempt activities is amenable to common proof.  In the absence of the ability to prove this essential element of all claims on a class-wide basis, the liability determination for putative class members would break down into individualized trials.  While it is true that Defendant has made a blanket determination that all class members are exempt, that is not sufficient to find that common questions predominate.  Here, the determination of the amount of time spent on various common activities would overwhelm any common questions to the point that the class action mechanism would not be superior to multiple trials or administrative proceedings.

> **B.**     **Certification of Certain Issues Under Rule 23(c)(4)**

Plaintiffs argue that, even if the class as a whole cannot be certified, certain issues can be certified per Rule 23(c)(4).  Specifically, Plaintiffs contend that even if the activities outside the store

United States District Court
Northern District of California

United States District Court
Northern District of California

are so varied that the outside sales exemption cannot be determined on a class-wide basis, the executive and administrative exemptions still could because there are commons questions as to whether: GMs have duties and responsibilities that involve management of the enterprise; GMs regularly direct the work of two or more employees;  GMs have hiring and firing authority; Fastenal's policies allow GMs to exercise discretion and independent judgment, and GMs spend the majority of their in-store time on tasks determined to be exempt.

It is true that, even when common issues do not predominate over the individual ones in a given case, a district court may nevertheless separate out certain common issues for class treatment under Rule 23(c)(4). Fed. R. Civ. P. 23(c)(4); *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. Cal. 1996).  However, the party seeking certification must still demonstrate that all the requirements of Rule 23(a) and (b) are met for the issues upon which certification is sought.  *Id.* at 1234-35.  The problem for Plaintiffs is that the evidence here, and even their evidence standing alone, does not indicate that there are any significant common issues that are susceptible to proof on a class-wide basis with respect to either the administrative or executive exemption.  Both exemptions still require a quantitative analysis of how class members spend their time.  As stated above, the evidence shows that this is not possible on a class-wide basis.

## CONCLUSION

For the foregoing reasons, motion for class certification is **DENIED**.  While it may be the case that certain GMs have been classified as exempt improperly, In light of the Court's ruling, hearing on Defendants' Motion to Decertify FLSA Collective Action, currently set for October 2, 2012, is **VACATED**.  The parties are directed to submit supplemental briefing regarding the effect of the Court's ruling on the motion to decertify, bearing in mind that such briefing is not an opportunity to seek reconsideration of the instant order.  Plaintiffs shall file their supplemental brief of no more than five (5) pages no later than October 17, 2012.  Defendant shall file its responsive supplemental brief

of no more than five (5) pages no later than October 31, 2012. The Court will determine after supplemental briefing whether a hearing is warranted.

       **IT IS SO ORDERED**.

**Dated: September 26, 2012**

                    **YVONNE GONZALEZ ROGERS**
          **UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

14